UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Salem Vegas, L.P. and Salem Vegas Investments, LLC, ) ) ) | |
| Plaintiffs, ) | Case No.: 2:12-cv-1892-GMN-CWH |
| vs. ) | **ORDER** |
| Anthony Guanci, ) ) | |
| Defendant. ) ) | |

Presently before the Court is the Motion to Dismiss, (ECF No. 148), filed by Defendant Anthony Guanci. Plaintiffs Salem Vegas, L.P. ("Salem Vegas") and Salem Vegas Investments, LLC ("SV Investments") filed a Response in opposition, (ECF No. 149), and Defendant Guanci filed a Reply, (ECF No. 150). For the reasons set forth herein, the Court will grant Defendant Guanci's Motion and dismiss Plaintiffs' Third Amended Complaint with prejudice.

## I.  BACKGROUND

This case centers upon allegations that Defendant Guanci breached his duties as a partner of Salem Vegas by executing a subordination agreement that may have delayed payments owed to Salem Vegas under a prior loan agreement. (Third Am. Compl., ECF No. 147).

Salem Vegas is a limited partnership formed under Delaware law by an agreement that was executed in June 2005 (the "Partnership Agreement"). (Third Am. Compl. 2:22-27). The Partnership Agreement named Salem Realty, LLC[1] as Salem Vegas' general partner, and Defendant Guanci, Eugene Kessler, Stuart Kessler, and Jack Kessler as limited partners. (*Id.* at

---

[1] Salem Realty was a limited liability company registered in Delaware whose managing members were Defendant Guanci and Stuart Kessler. (Third Am. Compl. 4:1-5).

3:20-27).

The Partnership Agreement was formed in order to facilitate the partners' investment in a resort construction project known as "Palms Place Vegas." (*Id.* at 2:10-18). The resort was to include "a 50 floor tower . . . consisting of 599 residential for-sale condominium units . . . and common facility areas including a full-service spa, swimming pool, recreation spaces, and shell bar and restaurant spaces." (Building Loan Agmt. at 8, ECF No. 39-6). The development of the project was overseen by Palms Place, LLC. (Third Am. Compl. 2:15-18).

Under the terms of the Partnership Agreement, Defendant Guanci had sole authority to negotiate with Palms Place, LLC. (*Id.* at 4:28-5:2). The Partnership Agreement specifically provided that no "managing person"[2] could be held liable for any loss to Salem Vegas except in the case of bad faith, gross negligence, or willful misconduct. (Partnership Agmt. § 9.5, ECF No. 39-3). The Partnership Agreement also contained a provision expressly allowing its members to pursue other business opportunities, stating, "[E]ach Partner may have other business interests and may engage in other activities in addition to those relating to [Salem Vegas], even if such activities may be in competition with the business of [Salem Vegas]." (*Id.* at § 9.6).

In 2005, Defendant Guanci, on behalf of Salem Vegas, executed an agreement (the "Salem Loan") providing that Salem Vegas would loan a sum of up to 10% of the costs of the Palms Place Project that exceeded the amount provided under an anticipated construction loan. (Salem Loan Agmt. § 2.1, ECF No. 39-4). In return, Salem Vegas was entitled to receive, *inter alia*, 10% of the proceeds of the sale of each condominium unit. (*Id.* at § 3).

In March 2005, before the Salem Loan Agreement was executed, Defendant Guanci had entered into a separate agreement with Palms Place, LLC which provided that Defendant

---

[2] "Managing Person" is defined as "a General Partner, an officer of [Salem Vegas] or of the General Partner, and their agents." (Partnership Agmt. § 1.1, ECF No. 39-3).

1  Guanci would advise Palms Place regarding planning, construction, architecture, sales, and
2  entitlements in order to ensure the project's timely completion (the "Consulting Services
3  Agreement"). (ECF No. 39-2).  In return, Palms Place agreed to pay a fee of $1,000,000 to
4  Defendant Guanci that would be distributed in equal monthly installments from the proceeds of
5  the anticipated construction loan. (*Id*.).  Plaintiffs allege that they did not become aware of the
6  Consulting Services Agreement until 2012. (Third Am. Compl., 7:1-6).

7  On March 13, 2006, Palms Place obtained a $240,000,000 loan for the project (the
8  "Building Loan"), funded by Wells Fargo Bank, Bank of Scotland, and JPMorgan Chase Bank
9  (the "Bank Lenders"). (Building Loan Agmt., ECF No. 39-6).  The Building Loan Agreement
10 specified that the distribution of these funds was contingent upon Salem Vegas' agreeing to
11 subordinate its interest under the Salem Loan. (*Id.* at § 3.1(i)).  On that same day, Defendant
12 Guanci executed an agreement (the "Subordination Agreement"), which rendered Salem
13 Vegas' interest junior to that of the Bank Lenders. (ECF No. 10-4).  Plaintiffs claim that they
14 did not become aware of the Subordination Agreement until 2012. (Third Am. Compl. 7:1-6).

15 Plaintiffs allege that Defendant Guanci's execution of the Subordination Agreement has
16 delayed the repayment of the Salem Loan. (*Id.* at 8:16-9:9).  Plaintiffs' Second Amended
17 Complaint set forth claims for (1) breach of contract, (2) contractual breach of the implied
18 covenant of good faith and fair dealing, (3) breach of fiduciary duty, and (4) tortious breach of
19 the implied covenant of good faith and fair dealing. (Sec. Am. Compl. 7:19-11:23, ECF No.
20 89).  On October 17, 2014, the Court dismissed the latter three claims with prejudice pursuant
21 to Federal Rule of Civil Procedure 12(b)(6). (Order 11:3-4, ECF No. 144).  The Court also
22 dismissed Plaintiffs' breach of contract claim, but after finding that it was not certain that
23 Plaintiffs could not correct deficiencies in the claim through amendment, the Court granted
24 leave for Plaintiffs to file a Third Amended Complaint.

25 Plaintiffs' Third Amended Complaint was filed on December 3, 2014.  In the Third

Amended Complaint, Plaintiffs re-assert their prior breach of contract claim, set forth a list of previously unaddressed provisions of the contract that they believe Defendant Guanci breached, and allege an entirely new claim for fraud in the inducement.

In the instant Motion, Defendant Guanci argues that the new claims in the Third Amended Complaint should be stricken pursuant to Federal Rule of Civil Procedure 15 and that Plaintiffs' re-asserted breach of contract claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed herein, the Court will grant the Motion and dismiss the Third Amended Complaint with prejudice.

## II.  LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegation are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the

complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *E.g.*, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. DISCUSSION

In the instant Motion, Defendant Guanci argues that Plaintiffs' newly asserted breach of contract theories as well as their claim for fraud in the inducement should be stricken, as Plaintiffs did not receive leave from the Court to assert new claims. Defendant Guanci also argues that Plaintiffs have also failed to sufficiently state a breach of contract claim in regard to

/ / /

/ / /

/ / /

/ / /

the Subordination Agreement.[3] The Court will address each of these arguments in turn.

### A. Defendant Guanci's Request to Strike Pursuant to Rule 15

In its October 17, 2014 Dismissal Order, the Court found that Plaintiffs had failed to sufficiently allege that Defendant Guanci's execution of the Consulting Services Agreement or Subordination Agreement were "so far beyond the bounds of reasonable judgment that [they seemed] essentially inexplicable on any ground other than bad faith." (Order 7:17-21, 10:4-8, ECF No. 144). In light of these findings, the Court dismissed Plaintiffs' breach of contract claim without prejudice and granted leave for Plaintiffs to file the Third Amended Complaint. (*Id.* at 8:3-5, 10:9-11, 11:7-9).

In addition to re-stating their prior breach of contract claim, Plaintiffs, without requesting leave, assert for the first time that Defendant Guanci failed to sufficiently contribute capital as required by Section 4.2 of the Partnership Agreement, failed to adequately maintain books and records in violation of Section 8.1 of the Partnership Agreement, and failed to maintain Salem Realty's corporate existence in violation of Section 9.1 of the Partnership Agreement. (Third Am. Compl. 9:11-15). Plaintiffs also set forth an entirely new cause of action for fraud in the inducement. (*Id.* at 10:11-12:9).

Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend his pleading once as a matter of course within twenty-one days after serving it, or after a pleading or motion responsive to it has been filed, whichever is earlier. Fed. R. Civ. Proc. 15(a). In all other cases, a party can amend his pleading only with the opposing party's written consent, or leave of

---

[3] As each is expressly relied upon by the Third Amended Complaint and no party questions their authenticity, the Court takes judicial notice of the Partnership Agreement (ECF No. 39-3), the Consulting Services Agreement (ECF No. 39-2), the Salem Loan Agreement (ECF No. 39-4), the Subordination Agreement (ECF No. 10-4), and the Building Loan Agreement (ECF Nos. 39-6, 39-7, 39-8). *See, e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("[I]n order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based, a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned.") (internal quotations omitted).

court. Fed. R. Civ. Proc. 15(a)(2). The Court's October 17, 2014 Dismissal Order granted Plaintiffs leave to amend only to address the deficiencies in the specified claim. It did not grant leave to add new claims for relief. Plaintiffs were therefore required to seek leave of the court or Defendant Guanci's written consent prior to asserting new claims for breach of contract or fraud. Thus, Court finds that the addition of the new breach of contract and fraud claims exceeds the scope of Plaintiffs' leave to amend, and these claims will therefore be stricken. *See, e.g.*, *Benton v. Baker Hughes*, No. 12-cv-7735-MMM-MRWX, 2013 WL 3353636, at *2-3 (C.D. Cal. June 30, 2013); *DeLeon v. Wells Fargo Bank, N.A.,* No. 10-cv-1390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010); *PB Farradyne, Inc. v. Peterson,* No. 05-cv-3447-SI, 2006 WL 2578273, at *3 (N.D. Cal. Sept. 6, 2006).

### B. Rule 12(b)(6) Dismissal

In their Response to the instant Motion, Plaintiffs acknowledge that the Third Amended Complaint does not contain any new factual allegations to support their claim that Defendant Guanci breached the Partnership Agreement by executing the Subordination Agreement. (Resp. 4:3-4, ECF No. 149). Nonetheless, Plaintiffs assert that the totality of Defendant Guanci's actions, rather than one discrete act, illustrate that Defendant Guanci carried out an intricate scheme to "induce [Plaintiff Salem Vegas] to make a loan that [Defendant Guanci] knew would not be repaid." (*Id.* at 5:8-9). However, as this assertion disregards the requirements for a breach of contract claim in the partnership context under Delaware law, it is not sufficient to overcome Defendant's Motion to Dismiss.

As an initial matter, the Court has already ruled that Plaintiffs' claims are governed by Delaware law, and therefore consults Delaware statutes and decisions of Delaware courts in determining whether dismissal is warranted. (*See* Order 5:10-13, ECF No. 144). Similarly, the Court has already recognized that Section 9.5 of the Partnership Agreement precluded individual liability except in cases of bad faith; therefore Plaintiffs must allege that Defendant

Guanci's acts amounted to bad faith in order to sufficiently state a claim for relief. (*Id.* at 8:2).

In its October 17, 2014 Dismissal Order, the Court relied upon *Brinckerhoff v. Enbridge Energy Company* in finding that Plaintiffs had failed to sufficiently state a claim that Defendant Guanci breached the Partnership Agreement. 67 A.3d 369, 373 (Del. 2013). *Brinckerhoff* involved claims for express and implied breaches of a partnership agreement based on allegations that a managing partner had improperly allowed its owner to fund a portion of the partnership's business venture in exchange for a share of the profits. *Id.* at 370-71. The Delaware Supreme Court held that a claim for bad faith in the context of a partnership agreement requires allegations showing that a business decision was "so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith." *Id.* at 373 (quoting *Parnes v. Bally Entm't Corp.*, 722 A.2d 1243, 1246 (Del. 1999)). The *Brinckerhoff* Court went on to find that the plaintiff had failed to sufficiently state a claim because the complaint did not "directly or by inference" indicate that the profit-sharing agreement was not simply a good-faith business transaction. *Id.*

After observing that the Building Loan Agreement expressly required that the interests of the Bank Lenders be made senior to those of other lenders involved in the Palms Place Project, the Court, in its October 17, 2014 Dismissal Order, held that Plaintiffs had failed to sufficiently allege that Defendant Guanci's decision to execute the Subordination Agreement was inexplicable on any ground other than bad faith. (Order 9:11-21). Indeed, the fact that most of the funding for the Palms Place Project might not have been obtained if Defendant Guanci had refused to execute the Subordination Agreement stands as a reasonable explanation for Defendant Guanci's actions that does not, in any way, indicate bad faith.

Plaintiffs argue that Defendant Guanci's alleged failure to properly disclose the Consulting Services Agreement coupled with his position as the only individual who could negotiate with Palms Place, LLC on Salem Vegas' behalf implies that the Subordination

1  Agreement was executed solely to ensure that Defendant Guanci received payment prior to
2  Plaintiffs. (Resp. 4:15-5:18).  However, this theory regarding the Defendant Guanci's
3  motivation is immaterial to the question at hand.  Pursuant to *Brinckerhoff*, Plaintiffs must set
4  forth factual allegations showing that the decision to execute the Subordination Agreement was
5  so unreasonable that it appears "*essentially inexplicable* on any ground other than bad faith." 67
6  A.3d at 373 (emphasis added).  Plaintiffs' allegations speak only to Defendant Guanci's
7  subjective reason for executing the Subordination Agreement and not whether the decision was
8  objectively unreasonable.  Because the Third Amended Complaint fails to sufficiently allege
9  that Defendant Guanci's acts were beyond the bounds of reasonable judgment, Plaintiffs have
10 failed to state claim upon which relief can be granted.  Accordingly, Defendant Guanci's
11 Motion to Dismiss will be granted.  As Plaintiffs have failed to state a claim after being given
12 leave to amend, the dismissal will be with prejudice.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Guanci's Motion, (ECF No. 148), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claim for fraud in the inducement, (Third Am. Compl. 10:10-12:9), as well as their additional breach of contract claims, (Third Am. Compl. 9:11-15), are **STRICKEN**.

**IT IS FURTHER ORDERED** that Plaintiffs' Third Amended Complaint is **DISMISSED with prejudice**.

The Clerk shall enter judgment accordingly and close the case.

**DATED** this 3rd day of June, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Court